Therefore the words "legal heirs of Mrs. Lisette Lockstaedt," used in the sixth paragraph of the will of the decedent herein, must be construed as meaning the "next of kin" of said Lisette Lockstaedt, or those related to her by blood who would share in the distribution of her personal estate had she died intestate. This, of course, excludes the husband of said Lisette Lockstaedt from any share in the legacy left to her under the will of Frederick Wolfram, deceased; and said legacy should be distributed among those related by blood to said Lisette Lockstaedt, or her legal next of kin, according to the degree of such relationship.

The executor under the last will and testament of said Lisette Lockstaedt, deceased, is entitled to receive the income on said legacy of $2,000 from December 1, 1907, the date of the last payment to her of such income, to the time of her death, April 4, 1908.

Enter decree accordingly.

(61 Misc. Rep. 216.)

### In re SNEDEKER et al.

(Surrogate's Court, Kings County. November, 1908.)

EXECUTORS AND ADMINISTRATORS (§ 296*)—DISTRIBUTION OF ESTATE.

An estate is "ready to be distributed," within Code Civ. Proc. § 2743, when its resources have been gathered and marshaled so that their extent and nature are known and its expenses and obligations have been ascertained, and it is not necessary that it should be wholly reduced to money.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 296.*]

In the matter of the settlement of the account of John D. Snedeker and others, as executors of Henry P. Martin. Decree rendered.

Edwin L. Snedeker (Edward E. Sprague, of counsel), for executors.
Harris & Towne (William H. Harris, of counsel), for residuary legatees.
Omri F. Hibbard, for Church Charity Foundation, American Church Building Fund Commission, St. Phebe's Mission, and Sheltering Arms Nursery.
Henry C. Willcox, for American Surety Co.
Davies, Stone & Auerbach (Theodore H. Lord, of counsel), for Domestic and Foreign Missionary Society of Protestant Episcopal Church of United States of America.

KETCHAM, S. The report of the referee is confirmed. Its conclusions involve a credit to the executors for the decrease in value of securities which they have not converted into cash. These securities were appraised at $609,053, with which sum the executors charge themselves; and they are found by the referee to have been of the value of $401,966 on November 13, 1907, when the executors' account was filed.

The briefs differ as to the disposition to be made of this proceeding. It is brought for the judicial settlement of the final account, and its only normal result is the ordinary decree of distribution.

The Code provides that:

"Where an account is judicially settled  *  *  *  and any part of the estate remains and is ready to be distributed to the creditors, legatees, next of kin, husband or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled, according to their respective rights." Code Civ. Proc. § 2743.

The estate is "ready to be distributed" when its resources have been gathered and marshaled, so that their extent and nature are known, and its expenses and obligations have been ascertained. The expression "ready to be distributed" cannot mean that a direction for the final disposition of the estate can only be made when it has been wholly reduced to money. If that were the interpretation, the distribution would be made to await the sale of the last insignificant item of property. Where there still remains property which has not been turned into cash, a complete decree may be made, in which the property may be taken at an estimate of its present value, however nominal or tentative; and, upon a change of circumstances, further direction may be made upon the foot of the decree, while in the meantime the enforcement of the decree may be the subject of regulation and restraint.

Let decree be presented stating the account as of the time of its filing and in accordance with the figures contained in the referee's report.

Decreed accordingly.

---

(61 Misc. Rep. 165.)

### ACKERMANN v. BERRIMAN et al.

(City Court of New York, Special Term. November, 1908.)

1. CRIMINAL LAW (§ 207*)—CITY MAGISTRATES—POWERS.

Under Laws 1813, p. 342, c. 86, special justices of the peace were provided for in the city of New York, having such powers as were exercised by justices of the peace in different counties in the state, with authority to issue summons in civil and criminal cases. Laws 1848, p. 249, c. 153, provided for the election of justices of the peace in said city, having the power and jurisdiction of such special justices, with authority to issue necessary process. Laws 1895, p. 1283, c. 601, abolished the office of police justice and created that of city magistrate, and by section 3 such magistrates were given all the powers vested by law in police justices, with certain exceptions. *Held*, that such magistrates have power to issue summons for persons accused of larceny.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 440; Dec. Dig. § 207.*]

2. MALICIOUS PROSECUTION (§ 8*)—SUMMONS ISSUED BY CITY MAGISTRATE.

The issuance by a city magistrate of a summons to a person accused of larceny and service thereof commences a judicial proceeding, which may form the basis of an action for malicious prosecution.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 8; Dec. Dig. § 8.*]

3. PROCESS (§ 1*)—"PRECEPTS."

A precept is a command or mandate in writing of equal importance with a writ or process.

[Ed. Note.—For other cases, see Process, Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 6, p. 5494.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes